JS 44 (Rev. 06/17) MMB

# CIVIL COVER SHEET

19-cv-3230

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Nicole Rayfield

**DEFENDANTS**
Cheyney University of Pennsylvania, Jeffrey Jones, Aaron Walton

**(b)** County of Residence of First Listed Plaintiff: Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jennifer C. Bell, Esq., Bell & Bell, LLP, 1617 JFK Blvd. Ste. 1254
Philadelphia, PA 19103 (215) 569-2500

Attorneys *(If Known)*
Cathleen A. McCormack, Esq., University Legal Counsel,
Pennsylvania State System of Higher Education, 2986 North Second Street, Harrisburg, PA 17110 (717) 720-4070

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Family and Medical Leave Act, 29 U.S.C. § 2611, et seq.
Brief description of cause:
FMLA Retaliation; wrongful termination in violation of Pennsylvania law; Pennsylvania Whistleblower Law.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE: 07/24/2019
SIGNATURE OF ATTORNEY OF RECORD: JC Bell

JUL 24 2019

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __513 Tatnall Avenue, Glenolden, Pennsylvania 19036__

Address of Defendant: __1837 University Circle, Cheyney, Pennsylvania 19319__

Place of Accident, Incident or Transaction: __1837 University Circle, Cheyney, Pennsylvania 19319__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __07/24/2019__    _____[signature]_____    __81045__
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A.  *Federal Question Cases:*
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
     *(Please specify):* _____

B.  *Diversity Jurisdiction Cases:*
☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Jennifer C. Bell__, counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: __07/24/2019__    _____[signature]_____    __81045__
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JUL 24 2019

Civ. 609 (5/2018)

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Nicole Rayfield | : | CIVIL ACTION |
| v. | : | |
| Cheyney University of Pennsylvania, et al. | : | NO. 19 3230 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ☐

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits ☐

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ☐

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ☐

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ☐

(f) Standard Management – Cases that do not fall into any one of the other tracks. ☑

| | | |
|---|---|---|
| July 24, 2019 | *(signature)* Plaintiff | |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-2500 | (215) 569-2220 | jenniferbell@bellandbelllaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JUL 24 2019

$400

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19 3230

| | |
|---|---|
| NICOLE RAYFIELD,<br><br>PLAINTIFF,<br><br>v.<br><br>CHEYNEY UNIVERSITY OF PENNSYLVANIA,<br><br>JEFFREY JONES,<br><br>and<br><br>AARON WALTON<br><br>DEFENDANTS. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Nicole Rayfield, by and through her undersigned attorneys, Bell & Bell LLP, hereby submits the following Complaint and Jury Demand ("Complaint"), as follows:

### PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Nicole Rayfield ("Ms. Rayfield"), a former employee of Defendant Cheyney University of Pennsylvania ("Cheyney" or "the University"). Ms. Rayfield has been harmed by the Defendants' retaliation against her, including, among other things, her wrongful termination, due to her taking leave and attempting to take leave under the FMLA; her refusal to participate in inappropriate and/or unlawful acts; and due to her having voiced complaints and concerns regarding such wrongful and/or illegal acts by Defendants. Such wrongful and/or illegal acts include, but are not limited to: (i) misuse of University scholarship funds, (ii) wrongful application

and grants of scholarship funds, and (iii) the University's acts in direct contravention to scholarship requirements.[1] This action arises under the Family and Medical Leave Act, 29 U.S.C. § 2611, et seq. ("FMLA"), the Pennsylvania Whistleblower Law, 43 Pa.C.S. § 1421, et seq. and the common law of Pennsylvania.

## JURISDICTIONAL STATEMENT

2. This Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

3. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

4. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

5. All conditions precedent to the institution of this suit have been fulfilled.

## VENUE

6. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b), because the claim arose in this judicial district.

---

[1] On May 16, 2019, Ms. Rayfield filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") alleging sexual discrimination, harassment and retaliation pursuant to Title VII and the Pennsylvania Human Relations Act ("PHRA"). Ms. Rayfield intends to seek leave to amend her Complaint after she has exhausted her administrative remedies with respect to the Title VII and PHRA claims alleged in her Charge of Discrimination.

## PARTIES

7. Plaintiff Nicole Rayfield is an adult citizen and resident of Glenolden, Pennsylvania and the United States of America.

8. Defendant Cheyney University of Pennsylvania is a public, co-educational university located at 1837 University Circle, Cheyney, Pennsylvania 19319. Cheyney is a public university that receives funding from the government, and thus is a public body as defined by the Pennsylvania Whistleblower Law, 43 Pa.C.S. § 1421, et seq. ("PWL").

9. Defendant Jeffrey Jones is an adult individual with a business address of 1837 University Circle, Cheyney, Pennsylvania 19319.

10. Defendant Aaron Walton is an adult individual with a business address of 1837 University Circle, Cheyney, Pennsylvania 19319.

11. At all times material hereto, Defendant Cheyney acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant Cheyney and in furtherance of Cheyney's business.

12. At all times relevant hereto, Plaintiff was an "employee" of Defendant Cheyney within the meaning of the laws at issue in this suit and is entitled to the protections of such laws.

13. At all times relevant hereto, Defendant Cheyney acted as Plaintiff's "employer" within the meaning of the laws at issue in this suit and, accordingly, is subject to the provisions of said laws.

14. At all times relevant hereto, Defendants Jeffrey Jones and Aaron Walton acted as "employers" within the meaning of the FMLA and are accordingly subject to the provisions of said laws.

15. Defendant Cheyney receives government funding from the Commonwealth of Pennsylvania and/or the United States and, accordingly, is subject to the PWL.

## FACTS

16. Ms. Rayfield began working for Cheyney in August of 2014. During her employment with Cheyney, Ms. Rayfield was promoted several times. Although she began her employment with Cheyney working part-time as Special Projects Coordinator, she was soon promoted to Director of Student Programs and working full-time. She was thereafter promoted again as Director of the Keystone Honors Academy.

17. Ms. Rayfield's most recent position held at the University was Director of the Keystone Honors Academy.

18. Defendant Jeffrey Jones was appointed in May of 2018 as Executive Director of Enrollment Management for the University.

19. Defendant Aaron Walton is the University's President.

20. Ms. Rayfield is highly skilled, educated and experienced in the field of Honors programs and scholarships in an educational institution setting. Her prior experience included four years of teaching as part of an Honors program, fourteen years working in higher education, and she is in the process of obtaining her PhD in Organizational Leadership.

21. At the time of her termination, Ms. Rayfield was the Director of the Keystone Honors Academy for the University. This position involved the oversight and administration of the Keystone scholarship program awarded to certain students who qualified for the Keystone scholarship. To be considered for a Keystone scholarship, every incoming University applicant must have a minimum 3.0 GPA and a minimum combined SAT I score of 1080, and reside in the Commonwealth of Pennsylvania; and every current University student must have a minimum 3.5 GPA and at least 24 credits. Specific policies and procedures were in place for the awarding and administration of the scholarships.

22. While employed at the University, Ms. Rayfield was a dedicated and loyal employee who carried out her duties in accordance with the highest ethical standards, and performed all such duties in a competent, efficient and exemplary manner.

23. Ms. Rayfield was very successful at her role at Cheyney. She never received any disciplinary actions or negative evaluations or reviews while employed by Cheyney. In addition, due to her tremendous success at her position, Cheyney created multiple positions based off of Ms. Rayfield's role in the Honors program to serve the rest of the student population.

24. Shortly after his employment at Cheyney began in May of 2018, Mr. Jones announced his intention to change the way that the University handled the scholarship program, and took charge of the program, despite Ms. Rayfield's specific role in the oversight and administration of the program. In fact, Ms. Rayfield was approached by several students, inquiring why Mr. Jones had taken over her role, thus undermining Ms. Rayfield's position and authority at the University.

25. For example, by email dated June 15, 2018, Mr. Jones informed Ms. Rayfield that, effective immediately, certain new processes would be put into place, including, among other things, the removal of scholarship information from the Honors website and the referral of all scholarship inquiries to Mr. Jones. Mr. Jones mandated that all scholarships letters and documentation were to be generated from the Admissions Office.

26. By email dated July 23, 2018, Mr. Jones stated that, notwithstanding past practice and policy, Cheyney would no longer offer scholarships to students who did not qualify upon entering the University; and that, effective immediately, no Keystone scholarships could be awarded without his prior approval.

27. By email dated August 20, 2018, Mr. Jones stated that any commitments regarding scholarships made by Ms. Rayfield would not be fulfilled, and reiterated that no scholarships were to be awarded without his specific approval.

28. By email dated November 20, 2018, Mr. Jones mandated that, despite the previous practice of awarding the Keystone scholarship to select students under certain conditions, that practice was now discontinued, as the scholarships were only to be offered to incoming students.

29. Ms. Rayfield was excluded from meetings and was denied access to information about honor students.

30. Despite several attempts to meet with Mr. Jones to discuss the honors program, Mr. Jones consistently cancelled scheduled meetings between him and Ms. Rayfield.

31. In taking over Ms. Rayfield's role, Mr. Jones, among other things: unlawfully and inappropriately awarded scholarships to unqualified students; denied scholarships to qualified students; ignored the appropriate policies and procedures for the awarding of scholarships to students; and directed that certain scholarship funds go to unauthorized and improper sources.

32. The following are specific examples of the wrongful and/or illegal conduct of Defendants with respect to the scholarships:

    a. In July 2018, Defendants' representative/University consultant Clifton Anderson ("Mr. Anderson") stated that, under the direction of Mr. Jones, the University was going to use the Keystone scholarship to change the quality of students being brought in to Cheyney. Mr. Anderson challenged the validity of the scholarship requirements and said that Cheyney employees must be "flexible" in their interpretation of the scholarship requirements (thus evidencing Defendants' plan to ignore and violate scholarship requirements).

b. In or about August 2018, Defendants made offers to 18 students who did not meet the minimum qualifications for the Keystone scholarship. This brought about several issues, such as: (i) students did not receive official notification of the scholarship, in accordance with Keystone policy; (ii) Defendants did not notify Keystone of the new recipients, resulting in an incomplete list of awarded recipients; (iii) the awarding of under-qualified students resulted in difficulties for their eligibility for induction into the Keystone Academy; (iv) students became extremely confused as to what Keystone was and what requirements were; and (v) students questioned the fairness of the Keystone program when they discovered that under-qualified and/or ineligible students were receiving scholarships.

c. For example, Mr. Jones stated that he was awarding a scholarship to a student who did not qualify for the scholarship based upon her low GPA. The student's GPA was 2.81, and the scholarship required a GPA of 3.0 or above. Mr. Jones gave this student a scholarship simply because she was a family friend of his, with the hope that her mother would encourage other potential students to attend Cheyney.

d. Mr. Jones also promised a Keystone scholarship to a current student who was not qualified for the scholarship because he did not have the requisite 24 credits. This promise made by Mr. Jones occurred shortly after he admonished Ms. Rayfield about making a verbal promise of a scholarship to a student.

e. In August 2018, Ms. Rayfield provided a list of students who qualified for the Keystone scholarship and should have been awarded the scholarship. These students did not receive the scholarships because Mr. Jones did not want to give it to them.

7

    f. Defendants misinformed students about the rules, policies and procedures with respect to the Keystone scholarship, resulting in inaccurate and misleading information given to students regarding, among other things, the provision of laptops, cost of single rooms, and the requirement of an Honors class in the curriculum.

    g. Ms. Rayfield was informed that Mr. Jones authorized a fleet of new cars for the entire admissions staff, but did not indicate how it would be paid.

    h. Defendants decided to discontinue the offering of another scholarship opportunity known as Bond Hill ("Bond Hill"), which provided scholarship funds for Cheyney students to go to graduate school. Upon information and belief, these additional funds from Bond Hill are being used for unauthorized and improper purposes.

    i. Defendants improperly used leftover scholarship funds to pay certain staff member salaries, including those in the financial aid and bursars' offices.

    j. Defendants improperly gave scholarships with the purpose of inflating enrollment so the University could pass the Middle State Accreditation Commission, and students who withdrew were not purged to make the enrollment number larger.

    k. Defendants improperly awarded scholarships without obtaining transcripts, leading to decreased enrollment when scholarship students were wrongfully billed for their semester of classes.

33. Ms. Rayfield openly expressed her concerns numerous times regarding the inappropriate and improper actions and inactions being taken with regard to the scholarships, both verbally and in writing. Specifically, on August 30, 2018, Ms. Rayfield sent Dr. Kent an email detailing certain of the policy violations that had been taking place at Cheyney regarding the scholarships. Further,

by email to Mr. Jones dated November 16, 2018, Ms. Rayfield noted that students were confused when Mr. Jones verbally promised scholarships, which led to their beliefs that: (1) they did not have to adhere to scholarship policies or procedures, and (2) Mr. Jones, rather than Ms. Rayfield, was in charge of the scholarships. Ms. Rayfield requested that Mr. Jones clarify to the students the division of responsibilities and administration of the scholarships.

34. Ms. Rayfield also expressed her concerns and significant discomfort regarding Mr. Jones' inappropriate and unprofessional acts in the workplace.

35. By email to Mr. Jones dated December 19, 2018, Ms. Rayfield stated that she understood that Mr. Jones had certain goals with respect to the University's growth, but requested that communications be more professional (i.e., that Mr. Jones refrain from using all capital letters and refrain from attacking Ms. Rayfield on her capabilities).

36. Ms. Rayfield further noted that she would like to move forward on working on a respectful, student-centered relationship, and requested a meeting to collaborate on how best to proceed.

37. By email to Cheyney President Aaron Walton dated December 19, 2018, Ms. Rayfield noted that Mr. Jones had been unprofessional, inappropriate and non-communicative with her with respect to changes in scholarship policy.

38. Ms. Rayfield did not receive any follow-up communication to either email.

39. On November 19, 2018, Ms. Rayfield fell down the stairs of her building.

40. She took a leave pursuant to the FMLA and returned to work on December 12, 2018.

41. During this time, Mr. Jones had several meetings in her absence regarding the scholarships.

42. An MRI taken after her fall demonstrated that Ms. Rayfield had a separate medical condition that required surgery.

43. In December 2018, Ms. Rayfield notified Vicki Strong, Benefits Manager at Cheyney, that she would soon require surgery due to this condition and that she would be requesting paperwork for FMLA benefits.

44. The following month, on January 24, 2019, consistent with their December communication, Ms. Rayfield requested paperwork from Ms. Strong for FMLA benefits.

45. Specifically, Ms. Rayfield informed Ms. Strong that she was scheduled for major surgery on February 13 and would be out for a duration of 4-6 weeks or longer, depending on her recovery process.

46. Ms. Rayfield offered her surgery paperwork if needed.

47. Ms. Strong told Ms. Rayfield that she would be receiving paperwork shortly.

48. Ms. Rayfield never received the paperwork for her requested FMLA benefits.

49. On January 28, 2019, Ms. Rayfield was terminated and was told that the reason for her termination was financial.

50. The timing of Ms. Rayfield's termination, coupled with the lack of any legitimate justification for her termination, indicates that the real reason for Ms. Rayfield's termination was retaliation on the part of Defendants.

51. The reason given for Ms. Rayfield's termination is pretextual.

52. Given the circumstances surrounding her termination on January 28, 2019, Ms. Rayfield was terminated in retaliation for seeking and/or taking leave pursuant to the FMLA; for refusing to participate in what she believed was wrongful, improper, unethical and/or unlawful acts with respect to the University scholarships; and for voicing her concerns regarding the Defendants' wrongful, improper, unethical and/or unlawful acts with respect to the University scholarship

funds, including, but not limited to, the misuse of scholarship funds, the misdirection of scholarship funds, and acts taken in direct contravention to scholarship requirements.

53. Defendant Cheyney retaliated against Ms. Rayfield in violation of the Pennsylvania Whistleblower Law.

54. Defendant Cheyney violated Pennsylvania public policy, by terminating Ms. Rayfield in retaliation for her opposition to and refusal to engage in unethical, improper and/or illegal activity.

55. Defendants retaliated against Ms. Rayfield in violation of the FMLA.

56. Ms. Rayfield has suffered lost wages and other benefits of employment due to Defendants' wrongful acts, as alleged herein.

57. Ms. Rayfield's financial losses, include, but are not limited to, lost wages, additional sums paid for medical coverage, and the necessity of paying attorneys' fees and costs to pursue this action, as a direct and proximate result of the actions and inactions of Defendants.

58. Ms. Rayfield has suffered and continues to suffer mental anguish and severe emotional distress as a result of the actions and/or inactions of Defendants.

59. In addition, Ms. Rayfield was compelled to delay the necessary surgery for her medical condition, as she was abruptly stripped of her medical coverage and could not obtain replacement coverage in time for her surgery date, which has caused further pain and anguish.

60. Ms. Rayfield has also suffered undue hardship in obtaining her PhD, as her dissertation was based on data at Cheyney, which is no longer available to her, and thus, the wrongful termination of Ms. Rayfield's employment is negatively affecting her scholarly ability to obtain her degree.

61. Defendants and their agents and employees involved in the conduct described herein all acted with the intent of causing, or in reckless disregard of the probability that their actions would cause Ms. Rayfield severe emotional distress and undue hardship.

## COUNT I
### The Family and Medical Leave Act, 29 U.S.C. § 2611, et seq.
(Plaintiff v. All Defendants)

62. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

63. Defendants' conduct, in retaliating against Ms. Rayfield for taking and attempting to take leave pursuant to the Family and Medical Leave Act, violated the FMLA.

64. Defendants' violations of the FMLA were intentional and willful, as Defendants knew or should have known the requirements of the FMLA.

65. Defendants' violations of the FMLA warrant the imposition of liquidated damages.

66. As a direct and proximate result of Defendants' violations of the FMLA, Ms. Rayfield has sustained a loss of earnings, loss of medical coverage for pending surgery of which Defendants were aware, severe emotional and psychological distress, personal embarrassment, loss of self-esteem, loss of earning power, back-pay, front-pay, interest due thereon, and has incurred attorneys' fees and costs.

67. Plaintiff Nicole Rayfield is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## COUNT II
### Wrongful Termination
### (Plaintiff v. Cheyney)

68. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

69. Defendant Cheyney terminated Ms. Rayfield as a result of Ms. Rayfield's opposition to and refusal to engage in unethical, improper and/or illegal activity as alleged herein.

70. Defendant Cheyney terminated Ms. Rayfield in violation of Pennsylvania public policy for her refusal to engage in unethical, improper and/or illegal activity.

71. The above described conduct of Defendant Cheyney constituted wrongful termination of Plaintiff.

72. Defendant Cheyney's actions were willful and malicious, and warrant the imposition of punitive damages.

73. As a result of her wrongful termination, Ms. Rayfield has suffered, among other things, lost wages, including lost benefits, and loss of income potential.

74. As a result of her wrongful termination, Ms. Rayfield has suffered severe emotional and psychological distress.

## COUNT III
### Pennsylvania Whistleblower Law
### (Plaintiff v. Cheyney)

75. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

76. Ms. Rayfield made good-faith reports to her employer, by complaining to her supervisors, that Defendant Cheyney was engaged in waste or wrongdoing.

77. In retaliation for her complaints, Defendant Cheyney terminated Ms. Rayfield in violation of the PWL.

78. Ms. Rayfield has suffered financial losses as a direct and proximate result of the actions and inactions of Defendant Cheyney.

79. As a result of Defendant Cheyney's conduct described herein, Ms. Rayfield has incurred financial damages, including but not limited to, lost earnings, lost medical benefits and coverage for a pending surgery known of by Defendants, and has incurred a significant obligation for attorneys' fees and costs due to having to bring this action.

80. As a result of Defendant Cheyney's conduct described herein, Ms. Rayfield has suffered and continues to suffer significant emotional and psychological distress.

81. Defendant Cheyney and its agents and representatives acted with knowledge of, or in reckless disregard of, the probability that their actions and inactions would cause Ms. Rayfield to suffer emotional distress.

## **PRAYER FOR RELIEF**

82. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Nicole Rayfield respectfully requests this Court enter judgment in her favor and against Defendants, and Order:

    a. Appropriate equitable relief including reinstatement or front pay;

    b. Defendants compensate Plaintiff Nicole Rayfield with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to the unlawful retaliation and wrongful termination alleged herein;

c. Defendants compensate Plaintiff Nicole Rayfield with the wages and other benefits and emoluments of employment lost due to Defendants' unlawful conduct;

d. Defendants pay Plaintiff Nicole Rayfield punitive damages;

e. Defendants pay Plaintiff Nicole Rayfield compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendants pay Plaintiff Nicole Rayfield's attorneys' fees and costs;

g. Plaintiff be awarded any and all other remedies available pursuant to the FMLA, PWL and Pennsylvania Common Law; and

h. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Nicole Rayfield hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: _____
Jennifer C. Bell, Esq.
PA Attorney I.D. No. 81045
1617 JFK Boulevard -- Suite 1254
Philadelphia, PA 19103
Telephone No.: (215) 569-2500

*Attorneys for Plaintiff Nicole Rayfield*

Dated: July 24, 2019